# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 18-68 |
| ) | Judge Nora Barry Fischer |
| RASHIKA PORTER, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

### I. Introduction

Presently before the Court is a Motion to Preclude Evidence About Destroyed Videotape Footage and brief in support (Docket Nos. 59, 60) filed by Defendant Rashika Porter ("Defendant"). The Government filed its Response in opposition thereto, and the Court held a hearing and oral argument on Defendant's motion on May 6, 2019, the official transcript of which has been filed of record and considered by the Court. (Docket Nos. 61, 63, 65). At the Court's direction, the parties submitted post-hearing Proposed Findings of Fact and Conclusions of Law ("FOF/COL"), (Docket Nos. 66, 68), but did not file responses to same by the established deadline of July 24, 2019. (Docket No. 69). After careful consideration of the parties' submissions, and for the following reasons, Defendant's Motion is denied.

### II. Background

#### A. Procedural History

On March 14, 2018, Defendant was charged in a one-count indictment with possession with intent to distribute less than 500 grams of cocaine on or about March 21, 2017, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Defendant was arraigned on March 21, 2018, he pled not guilty to the charge, waived a detention hearing, and he is detained pending trial.

Defendant originally was represented by court-appointed counsel Stephen Begler. On August 6, 2018, Attorney Begler filed a motion for discovery and a motion in limine to prohibit the Government from using at trial a recorded jail telephone call made by Defendant. (Docket Nos. 19, 20). A motion hearing was scheduled, but Attorney Begler moved to continue the hearing and to file additional pretrial motions, which the Court granted. Attorney Begler subsequently filed a second motion in limine to preclude the Government from introducing evidence that Defendant was involved in a high-speed chase on March 22, 2017, (Docket No. 29), and a motion hearing was scheduled to occur on November 21, 2018.

On November 13, 2018, Attorney Begler filed a motion to withdraw as counsel. Consequently, the scheduled motion hearing was continued until further order of court and a hearing on Attorney Begler's motion to withdraw instead was held at that time. Following the hearing, the Court granted Attorney Begler's motion to withdraw as counsel and Attorney Dietz was appointed to represent Defendant.

On April 10, 2019, Attorney Dietz filed the following additional pretrial motions: for disclosure of *Brady* materials; for additional discovery; for early disclosure of Jencks material; to preserve rough notes; for disclosure of Rule 404(b) material; and the pending motion to preclude evidence about destroyed video tape footage. (Docket Nos. 49, 51, 53, 55, 57, 59). The Government filed an omnibus response to these motions. (Docket No. 61). As noted, on May 6, 2019, a hearing was held on Defendant's motion to preclude evidence, the parties submitted their respective proposed FOF/COL and the matter is now ripe for disposition. At issue is whether the law enforcement officers who previously viewed now-missing videotape footage related to this case may testify at trial concerning what they observed on that footage.

### B. Facts[1]

At the hearing, the Government called Daniel Kinzel, who is a Task Force Officer ("TFO") of the Drug Enforcement Administration ("DEA"). In sum, TFO Kinzel testified that the missing videotape footage was accidentally erased for unexplained reasons and various efforts to restore the video have been unsuccessful, and defense counsel vigorously cross-examined him on these matters. In this Court's estimation, based on TFO Kinzel's demeanor and testimony in response to the questioning of the attorneys and the Court at the motion hearing, he offered credible testimony concerning the matter at issue, despite the defense's efforts to impeach him. *See United States v. Garcia*, 521 F. App'x 71, 73 (3d Cir. 2013) (quoting *Anderson v. City of Bessemer,* 470 U.S. 564, 575 (1985)) ("'[w]hen findings are based on determinations regarding the credibility of witnesses ... for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.'"). In addition, TFO Kinzel presented as an experienced officer, having been employed as a police officer for West Homestead Borough since 2000, where he currently is a detective with the narcotics squad and a task force officer with the DEA. (Docket No. 65 at 16). In his capacity with the DEA, TFO Kinzel is one of the case agents assigned to this case, along with TFO Tom Dunlevy. (*Id.* at 16, 23).

By way of background, the Government alleges that on March 21, 2017, Defendant stored cocaine in the trash at Al's Fish and Chicken, a restaurant in Duquesne, Pennsylvania, he left the scene, and he returned later that day and searched the dumpster for the discarded cocaine as captured on the restaurant's surveillance video cameras. (Docket No. 61 at 1). Defendant claims

---

[1] It is well-settled that "the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." *United States v. Richardson*, 501 F. Supp. 2d 724, 734 (W.D. Pa. 2007) (citations omitted).

that the video provided to him in discovery does not contain any footage of him disposing of narcotics in the trash at Al's Fish and Chicken. (Docket No. 59, ¶ 4). According to the Government, it has been unable to access that portion of the video because of technical difficulties, despite efforts by the case agent and others to restore the video.[2] (Docket No. 61 at 2). The parties disagree whether law enforcement officers who reviewed the missing video footage should be permitted to testify at trial concerning what they observed on the footage.

Turning to the testimony adduced at the hearing, TFO Kinzel testified that he went to Al's Fish and Chicken restaurant on April 11, 2017, along with TFO Dunlevy and DEA communications technician Brian Volpert, to download surveillance video related to this case onto a thumb drive. (Docket No. 65 at 16, 36-37). The restaurant had two different surveillance systems - an older Nuvico surveillance system inside and a newer system outside. (*Id.* at 34-35, 39). The DEA representatives made separate copies of each system. (*Id.* at 35).

Upon returning to the DEA office with the thumb drive, TFOs Kinzel and Dunlevy reviewed the video surveillance, which included footage from inside the restaurant. (Docket No. 65 at 17). In addition, TFO Kinzel's supervisor, two other DEA agents and Mr. Volpert also viewed the video because of the open layout of the office space. (*Id.* at 17, 27). TFO Kinzel testified that he did not observe anything exculpatory on the video showing that Defendant did not have possession of the cocaine. (*Id.* at 19). TFO Kinzel further testified that the DEA would prefer to have the missing video footage available at trial because it "shows exactly what went on. It's the main meat and potatoes." (*Id.*).

After TFO Kinzel and the other DEA representatives reviewed the video, it was reproduced for purposes of providing it to defense counsel and presenting it at trial. (Docket No.

---

2  The Government submits that it has provided the defense with a CD containing the available surveillance videotape. (Docket No. 61 at 2).

65 at 17). When that occurred, a portion of the video, which happened to be the most relevant portion, went missing. (*Id.*). The original video and the duplicate reproduced by the DEA are both missing the same portion. (*Id.* at 40).

TFO Kinzel and others at the DEA spent a number of hours trying to determine what happened to the missing portion of the video. (Docket No. 65 at 17-18). TFO Kinzel took the video to Detective Holtzman, who runs the the Allegheny County computer forensics lab, but his efforts to extract the missing file were unsuccessful. (*Id.* at 18, 42). In addition, Mr. Volpert contacted an engineer who previously worked for Nuvico, which has been out of business for over ten years. (*Id.* at 18, 39-40, 43). The engineer told Mr. Volpert that nothing could be done because there is a water mark imprinted into the console of the video to prevent corruption, but the video may have been corrupted when TFO Kinzel put the thumb drive into the DEA "Firebird" computer, which is a secure government Internet system. (*Id.* at 18, 44). The DEA representatives believe that is what occurred, but no one knows for certain what happened to the video. (*Id.* at 22-23, 44). Finally, the officers went back to Al's Fish and Chicken restaurant to request another copy of the video, but it was not saved because it exceeded the time limit on the video console, and the restaurant does not maintain back-up tapes. (*Id.* at 33, 45).

TFO Kinzel testified that he and TFO Dunlevy did not prepare written reports outlining what they viewed on the video because they did not think it would be corrupted and they believed it would be continually accessible. (Docket No. 65 at 18-19). The other DEA agents who viewed the video did not prepare reports because they were not assigned to the case. (*Id.* at 27). Although there were no written reports, TFO Dunlevy made notes while he viewed the video, (*id.* at 42), which were provided to Defendant and the Court following the hearing.

### III. Motion to Preclude Evidence About Destroyed Videotape Footage

Defendant has moved to preclude the Government from presenting the officers' testimony at trial regarding what they observed on the missing surveillance video footage. Defendant initially argued in his motion and supporting brief that this testimony should not be admitted because: (1) it violates the Best Evidence Rule; (2) the prejudicial value of admitting the testimony substantially outweighs its probative value under Federal Rule of Evidence 403; (3) destruction of the video footage violates the spoliation doctrine; and (4) admission of the testimony violates Rule 701. (Docket Nos. 59, 60). However, in Defendant's proposed FOF/COL, he appears to have abandoned three of these arguments and focuses exclusively on Rule 403, contending that the officers' testimony should be excluded because it is unduly prejudicial and cumulative. (Docket No. 66 at 3-5).

The Government responds that the officers' testimony is not unduly prejudicial because the Government has produced notes taken by TFO Dunlevy which Defendant can use for cross-examination, and it is not cumulative just because the Government may also have eyewitness testimony describing what the officers observed on the video. (Docket No. 68, ¶¶ 16, 17, 19, 20). The Government further responds that the officers' testimony is not precluded by the Best Evidence Rule or the spoliation doctrine because there is no evidence that the Government acted in bad faith. (Docket No. 61 at 3). To the contrary, the Government took multiple steps to retrieve the missing video footage, which it claims would have been helpful to its case, but was unable to do so because of technical difficulties. (*Id.* at 4; Docket No. 68, ¶¶ 32, 33). Finally, the officers' testimony is not barred by Rule 701 because it is rationally related to their perceptions of viewing the video footage. (Docket No. 61 at 6; Docket No. 68, ¶¶ 23, 24).

### A. Rule 403

As stated, Defendant's primary contention is that "the admission of testimony from law enforcement officers regarding the missing footage is unduly prejudicial and should be precluded from trial pursuant to Fed. R. Evid. 403." (Docket No. 66 at 3). According to Defendant, he will be unable to effectively cross-examine the officers because they did not prepare a report about what they observed on the missing video footage and TFO Dunlevy's notes of what he viewed are general, difficult to decipher and do not mention "the most relevant portion" of the videotape. (*Id.* at 4-5). Defendant also contends that the officers' testimony would be cumulative because eyewitness testimony is supposedly available concerning the alleged events on the missing footage. (*Id.* at 5). For reasons explained below, the Court finds that the officers' testimony is not barred by Rule 403.

Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Evidence should be excluded under Rule 403 only sparingly since the evidence excluded is concededly probative," and the balance "should be struck in favor of admissibility." *Blancha v. Raymark Indus.*, 972 F.2d 507, 516 (3d Cir. 1992). As the Third Circuit Court of Appeals has made clear, this is particularly true at the pretrial phase of litigation:

> Excluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary, because no harm is done by admitting it at that stage. . . . We believe that Rule 403 is a trial-oriented rule. Precipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are therefore unfair and improper.

*In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990). Accordingly, our appellate court has "stress[ed] that *pretrial* Rule 403 exclusions should rarely be granted." *Id.* (emphasis

in original).

As an initial matter, the officers' testimony is probative because TFO Kinzel described the missing video footage as "show[ing] exactly what went on. It's the meat and potatoes." (Docket No. 65 at 19). As such, the inquiry is whether the probative value of the officers' testimony is substantially outweighed by the danger of unfair prejudice or other concerns specified in Rule 403.

To support his argument that the officers' testimony should be excluded under Rule 403, Defendant relies on *United States v. Brown*, Crim. No. 08-98, 2009 WL 2338112 (W.D. Pa. July 29, 2009), in which a court in this District excluded the testimony of DEA agents regarding missing video on Rule 403 grounds because: (1) cross-examination of the agents would be extremely difficult as they did not take contemporaneous notes that could qualify as present sense impressions of the video tape, but rather intended to testify regarding what they remembered seeing on the recording when they watched it one time three years prior; (2) the jury could be left with the improper impression that the agents were eyewitnesses to the crime; and (3) the testimony was cumulative, given that other evidence of the crime was available, including an audio tape of the telephone conversation between the defendant and a confidential informant arranging the purchase that purportedly was depicted on the corrupted video tape. *Id.* at * 2.

This case is distinguishable from *Brown* and more akin to *United States v. Ortiz*, 654 F. App'x 564, 568-69 (3d Cir. 2016), in which the Third Circuit Court of Appeals held that the district court did not abuse its discretion under Rule 403 in admitting testimony from DEA agents regarding what they viewed on video recordings that had been accidentally destroyed. *Ortiz* held that the loss of the recordings did not unfairly prejudice the defense's ability to cross-examine the agents because when they testified from their reports alone, the defense had the reports to aid in cross examination. *Id.* at 568. Further, when the agents testified concerning their personal

8

recollections from previously viewing the tapes, they "were subject to cross-examination like any other eyewitness—they saw an event unfold, there was neither video nor DEA–6 corroboration of their story, and the quality and accuracy of their perceptions were subject to attack by the defense." *Id.* at 568-69.

Here, TFO Kinzel testified that TFO Dunlevy made notes while he viewed the video, (Docket No. 65 at 42), which were provided to Defendant and the Court following the hearing. As in *Ortiz*, Defendant can use TFO Dunlevy's notes for cross-examination to explore his stated concerns that the notes "are very general, difficult to decipher and do not contain any reference to 'the most relevant portion' of the videotape." *See* Docket No. 66 at 5. Defendant can also test the "quality and accuracy" of TFO Kinzel's and TFO Dunley's perceptions by cross-examining them concerning the lack of reports to corroborate their testimony about the events they viewed on the video footage. *See Ortiz*, 654 F. App'x at 568-69. As such, Defendant will not be prejudiced on cross-examination.

In addition, testimony by TFOs Kinzel and Dunlevy will not create a significant danger of confusing the jury or misleading it into believing that they were eyewitnesses to the events in question. Any jury confusion can be eliminated through cross-examination by the defense and by a proper limiting instruction informing the jury as to the source of the agents' testimony. *See Ortiz*, 654 F. App'x at 569 (observing that the jury was properly informed whether the agents' testimony was from live surveillance, the intact recordings, the lost recordings or from a refreshed recollection of same).

Finally, testimony by TFOs Kinzel and Dunlevy will not be cumulative as Defendant claims. As noted, this case is similar to the situation before the District Court in *Ortiz*, where, "apart from the missing video, there exists no similar recording of the defendant's alleged actions." *United States v. Ortiz*, Crim. No. 11-251-08, 2013 WL 101727, at *5 (E.D. Pa. Jan. 7,

2013). Furthermore, even if the Government has eyewitness testimony concerning the events on the missing video footage which it may present at trial, the officers' testimony about their observations of the video is not cumulative. Rather, the officers' testimony could corroborate the eyewitness testimony. *Id.* at 6 (rejecting argument that the agents' testimony regarding missing video footage would be cumulative, because it would corroborate other evidence offered by the Government). For these reasons, the Court rejects Defendant's "cumulative" argument.

Based on the circumstances presented here, the Court concludes that the probative value of the officers' testimony is not substantially outweighed by the danger of unfair prejudice or confusing or misleading the jury and the evidence is not cumulative. As such, Defendant's motion to preclude the officers' testimony at trial under Rule 403 is denied.

### B. Best Evidence Rule

As noted, Defendant initially argued that the Government should be precluded from offering the officers' testimony regarding what they observed on the missing video footage because the admission of such evidence violates the Best Evidence Rule. Although Defendant did not further elaborate on this argument in his FOF/COL, the Court nevertheless concludes that the officers' testimony is not barred by that rule.

The Best Evidence Rule states that the original writing, recording or photograph[3] at issue must be produced in evidence. Fed. R. Evid. 1002. However, this requirement does not apply if "all the originals are lost or destroyed, and not by the proponent acting in bad faith." Fed. R. Evid. 1004(a). "It is the burden of the proponent of the evidence to prove that the originals were not lost or destroyed in bad faith." *Ortiz*, 2013 WL 101727, at *3 (quoting *Stocchi v. Kmart Corp.*, No. Civ. A. 96-CV-4884, 1997 WL 611619, at *1 (E.D. Pa. Sept. 24, 1997)); *Brown*, 2009

---

3 A videotape falls under the definition of a "photograph." *See* Fed. R. Evid. 1001(c) ("A 'photograph' means a photographic image or its equivalent stored in any form."); *Brown*, 2009 WL 2338112, at *1, n.1 ("Pursuant to Federal Rule of Evidence 1001, a video tape is a 'photograph' as used in Federal Rule of Evidence 1004.").

WL 2338112, at *1 ("[T]he government must prove that the original recording was lost or destroyed, but not in bad faith."). According to the Advisory Committee Notes to Rule 1004, "if failure to produce the original is satisfactorily explained, secondary evidence is admissible."

Here, there is no evidence that the missing video footage was destroyed in bad faith by the Government or its agents. TFO Kinzel credibly testified at the hearing that the footage was lost as the result of some unknown technological malfunction. (Docket No. 65 at 17, 22-23, 44). TFO Kinzel also credibly testified that he and others at the DEA spent a number of hours trying to determine what happened to the missing portion of the video, including consulting with Detective Holtzman at the Allegheny County computer forensics lab, contacting an engineer who previously worked for Nuvico, the manufacturer of the equipment, and returning to Al's Fish and Chicken restaurant to ask for another copy of the video. (Docket No. 65 at 17-18, 33, 39-40, 42-43). Through TFO Kinzel's testimony, the Government provided evidence both as to the loss of the video footage and the subsequent recovery effort. Based on this evidence, the Court finds that the Government established that it did not act in bad faith regarding the missing footage. Accordingly, testimony regarding the missing footage, as secondary evidence, is admissible, and Defendant's motion under the Best Evidence Rule is denied.

### C. **Spoliation**

Defendant also initially argued that the Government should be precluded from offering the officers' testimony regarding the contents of the missing video footage as a sanction pursuant to the spoliation doctrine. Although Defendant did not advocate for this sanction in his FOF/COL, the Court finds that his spoliation argument is unfounded.

"Spoliation is usually referenced in instances where evidence has been altered or

destroyed."[4] *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012) (citation omitted). "[A] finding of bad faith is pivotal to a spoliation determination." *Id.* at 79; *see also Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 334 (3d Cir. 1995) ("No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for."). As explained, there is no evidence that the Government has acted in bad faith concerning the missing video footage, thus spoliation is inapplicable because the evidence at issue was "lost or accidentally destroyed." Consequently, Defendant's motion on this ground is denied.

### D. Rule 701

Finally, although not further developed in Defendant's FOF/COL, he originally argued that permitting the law enforcement officers to testify about the contents of the missing video footage would violate Rule 701, which provides:

> [i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. The Court also rejects Defendant's argument on this basis. As the Government correctly noted, the officers' testimony would be rationally based on their perceptions of viewing the video and their knowledge of what Defendant looks like, and it would help the jury determine if he entered the restaurant and deposited cocaine there. (Docket No. 61 at 6). As explained in *Ortiz*, "[t]hat the agents viewed the events on a recording rather than in person does not, without more, transform their personal observations into lay opinion." *Ortiz*, 654 Fed. App'x at 569. Accordingly, Rule 701 does not afford Defendant relief and his motion

---

[4] Potential sanctions for spoliation include the dismissal of a claim, the suppression of evidence, an adverse inference, fines or attorney's fees and costs. *Marsulex Envtl. Techs. v. Selip S.PA.*, Civ. No. 1:15-CV-00269, 2019 WL 2184873, at *8 (M.D. Pa. May 21, 2019).

on that basis is denied.

**IV.     Conclusion**

For the reasons discussed herein, Defendant's Motion to Preclude Evidence About Destroyed Videotape Footage (Docket No. 59) is DENIED in its entirety.

An appropriate Order follows.

<i>s/ Nora Barry Fischer</i><br>
Nora Barry Fischer<br>
Senior United States District Judge

Date:   August 22, 2019

cc/ecf:  All counsel of record